UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALAN RICHARD ROCCONI,

    Petitioner,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Respondent.

No. 1:17-cv-00557-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

## I. <u>Introduction</u>

Plaintiff Alan Richard Rocconi ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 12, 13 and 14. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

## II. <u>Procedural Background</u>

On June 3, 2013, Plaintiff filed an application for disability insurance benefits alleging disability beginning December 31, 2012. AR 23. The Commissioner denied his application

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 4 and 6.

1

initially on October 29, 2013, and upon reconsideration on March 27, 2014. AR 23. On May 14, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 23.

Administrative Law Judge E. Alis presided over an administrative hearing on September 3, 2015. AR 39-66. Plaintiff, represented by counsel, appeared and testified. AR 39. An impartial vocational expert Cathleen Spencer (the "VE") also appeared and testified. AR 39.

On October 23, 2015, the ALJ denied Plaintiff's application. AR 23-34. The Appeals Council denied review on February 15, 2017. AR 1-4. On April 20, 2017, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony and Report

Plaintiff (born November 9, 1960) had not worked since he injured his left hand on while working as a garbage collector on December 31, 2012. AR 44. When Plaintiff stepped off the platform on the back of the truck, he found himself suspended over the ground after his hand caught between a grab bar and the truck controls. AR 48. Following an extended treatment and recovery period, the doctor determined that Plaintiff could not return to his former work. AR 49.

Plaintiff lived with his adult son and a Labrador retriever puppy. AR 44-45. He watched television and played with the puppy. AR 55. Although he experienced pain when putting on his pants and shoes and tying his shoes, Plaintiff was able to dress himself and take care of his own personal hygiene. AR 53, 56. Plaintiff was able to cook for himself, selecting tools that enabled him to perform component tasks without pinching or squeezing. AR 54. He washed dishes and sometimes did his own laundry. AR 56.

When Plaintiff last renewed his driver's license, he elected not to retain his Class B (commercial) license. AR 46. He remained able to drive himself on errands but relied on his son or a friend to drive longer distances, particularly when he towed a boat to go fishing. AR 47-48.

After a lifetime of hard work, Plaintiff had continual pain. AR 55-57. His pain interfered with his sleep. AR 58-59. He experienced back particularly when he sat too long. AR 48. He had back spasms for about twenty years which were relieved with medication (Flexeril or metaxalone). AR 50-51. (Flexiril made Plaintiff sleepy, and metaxalone made him dizzy. AR

2

51.) Plaintiff's doctor did not recommend back surgery. AR 50. Plaintiff also had arthritis in his thumb joints and experiences numbness in his hands. AR 48, 53. Although he recently experienced leg pain, he was reluctant to see the doctor because of the expense. AR 57. Plaintiff also had asthma or COPD, which was aggravated by dirty air or hot and muggy weather. AR 58.

### B. Medical Records

Plaintiff's medical records include treatment of hand and back conditions not related to Plaintiff's December 2012 accident as well as treatment for injuries resulting from the accident that were addressed by worker's compensation coverage.

On November 7, 2012, orthopedic surgeon Todd C. Smith, M.D., examined Plaintiff, who had been experiencing bilateral upper extremity pain and weakness for three or four years. AR 265-73. Splinting and injections had provided temporary relief but Plaintiff was having trouble with gripping and sleeping. AR 265. Dr. Smith observed a positive Tinel's sign over left and right carpal tunnels, negative over brachial plexus and cubital tunnel. AR 266. Phalen's test was positive with paresthesias into the index and middle fingers bilaterally. AR 266. Plaintiff had a mildly positive thumb CMC grind bilaterally and evidence of early Dupuytren disease of both palms. AR 266. Radiographs revealed thumb CMC arthritis. EMG studies confirmed bilateral carpal tunnel syndrome. AR 266. Dr. Smith recommended carpal tunnel surgery, beginning with Plaintiff's left hand, which was more seriously affected. AR 266.

Following his December 31, 2012, accident, Plaintiff immediately sought treatment at the emergency department of Valley Care Medical Center, Pleasanton, California. AR 230-35. Treating professionals observed swelling over the dorsum of the wrist and carpal bones, and superficial abrasions over the second and third metacarpal. AR 230. Plaintiff reported pain with extension and hand grip, and slightly decreased sensation at the tips of the middle fingers. AR 230. X-rays showed cortical irregularity along the distal and ulnar aspects of the trapezium but no obvious dislocation. AR 231-32. A radiopaque foreign object was present along the volar aspect of the left hand near the distal metacarpal. AR 231-32. Radiologist Douglas Yoshida, M.D., suspected a fracture of the trapezium. AR 231-32. After the wound was cleaned and volar and spica (thumb) splints applied, Plaintiff was released. AR 233.

Despite his recent injury, Plaintiff reported to Sutter Health on January 7, 2013, for a preoperative examination for previously scheduled carpal tunnel surgery. AR 240-51. Plaintiff's medical history included lumbago, neck pain, essential hypertension and asthma. AR 250. The surgery was postponed.

On January 16, 2013, Dr. Smith examined Plaintiff's injury, which the doctor described as a "forced flexion maneuver." AR 279-91. The doctor was unable to identify the presumed fracture. AR 279. The base of Plaintiff's thumb was mildly swollen and tender to palpation. AR 280. The range of wrist motion was limited to 20 degrees dorsiflexion and 20 degrees volar flexion. AR 280. Although Plaintiff could touch the tip of his index finger with his thumb, he could not bring his fingers, particularly his index and middle finger, to his palm and could not bring his thumb across the palm of the hand. AR 280. The right wrist and fingers had a full range of motion. AR 280. Plaintiff's pain was significant. AR 280.

Plaintiff returned to receive worker's compensation treatment from Dr. Smith on January 30, 2013 (AR 292-300), February 27, 2013 (AR 301-309), March 27, 2013 (AR 310-17), April 24, 2013 (AR 318-25), May 24, 2013 (AR 326-37), and July 8, 2013 (AR 609-18). As his injury healed, Plaintiff demonstrated reduced pain and tenderness, and improved range of motion and grip strength. Plaintiff's treatment included oral medication, local injections and physical therapy. The physical therapy records are included in the record at AR 340-88.

On June 4, 2013, Pamela Starks, M.D., who was Plaintiff's pain management specialist, examined Plaintiff and noted continued neck and back pain, which radiated into his legs. AR 253-62. Dr. Starks observed painful and reduced lumbar-sacral range of motion and mild local tenderness over the lumbosacral spine. AR 255. Despite using albuterol for his COPD, Plaintiff reported problems with coughing. AR 253.

On October 25, 2013, Dr. Smith examined Plaintiff's pre-existing carpal tunnel syndrome independent of the ongoing worker's compensation treatment. AR 619-24. Dr. Smith performed carpal tunnel release surgery on November 5, 2013. AR 743-844.

By his post-operative examination on November 21, 2013, Plaintiff's incision was well healed. AR 626. Plaintiff continued to experience some numbness in his fingers and continuing

1  thumb pain from arthritis. AR 626. Although Plaintiff complained of continued soreness on
2  December 27, 2013, Dr. Smith noted full range of motion and improvement in the remaining
3  numbness. AR 633-38.
4      On January 28, 2015, Plaintiff was examined by family practitioner Tiffany Gee, M.D.
5  AR 1037-46. Dr. Gee diagnosed essential hypertension, COPD with asthma and hand pain. AR
6  1037. Plaintiff had not been taking his prescribed medications due to lack of insurance. AR
7  1040. He was using marijuana for pain relief. AR 1040. On March 13, 2015, Plaintiff saw Dr.
8  Starks and requested a return to medication for back pain. AR 1047-54.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

///

## V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI. **Summary of the ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 23-34. The ALJ found that Plaintiff had not worked since the alleged onset date of December 31, 2012. AR 25. Plaintiff had the following serious impairments: degenerative disc disease, osteoarthritis of the CMC articulation of the bilateral hands and carpal tunnel syndrome. AR 25. The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; and 404.1526). AR 26. The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb ramps and stairs; climb ladders, ropes and scaffolds; balance, stoop, kneel, crouch and crawl; and reach overhead bilaterally. AR 26. Plaintiff could frequently handle, feel and finger. AR 26. He should have no concentrated exposure to extreme cold. AR 26. Although Plaintiff was unable to perform any past relevant work, significant numbers of jobs that Plaintiff can perform exist in the national economy. AR 32. Accordingly, the ALJ found that Plaintiff was not disabled. AR 33.

### VII. **Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in finding that Plaintiff's testimony lacked credibility without providing clear and convincing reasons for that finding. The Commissioner responds that the ALJ properly discounted Plaintiff's testimony of disabling pain and other symptoms as inconsistent with both his activities of daily living and the medical evidence.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). To determine whether the ALJ's findings are supported by substantial evidence, a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 27. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15; *Smolen*, 80 F.3d at 1281. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also* Social Security Ruling ("SSR") 96-7p[2] (stating that an ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991).

In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," considering factors such as a lack of cooperation during consultative examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek

---

[2] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016); 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to March 28, 2016); 2017 WL 5180304, *2 (Oct. 25, 2017) (further correcting SSR 16-3p). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the force of law," Social Security Rulings "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") In this case, SSR 16-3p became effective before the hearing administrative hearing and issuance of the hearing decision. When a federal court reviews the final decision in a claim, the district court is to apply the rules in effect when the decision was issued by the agency. SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017). Accordingly, Ruling 16-3p does not apply in this case.

treatment, inconsistencies between the testimony and conduct, and inconsistencies between daily activities and the alleged symptoms." *Tonapetyan v. Halter,* 242 F.3d 242 F.3d1144, 1146; *see also Smolen*, 80 F.3d at 1284; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (including as factors claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties about the nature, severity, and effect of the alleged disabling symptoms). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. In this case, the ALJ provided a detailed and lengthy discussion of Plaintiff's treatment and recovery following his accident. AR 27-32.

Using Defendant's boilerplate language, the ALJ wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible for the reasons explained in the decision." AR 27. First, the ALJ found that Plaintiff testified to activities of daily living that were not consistent with those of a totally disabled person, including driving himself to the hearing, driving a motor boat, caring for a Labrador puppy, performing his own personal care, making his own breakfast, doing dishes and laundry, vacuuming, mopping, doing yard work, taking out the trash and taking daily walks. AR 27.

Second, Plaintiff received only conservative medical treatment that was inconsistent with the level of treatment to be expected for a totally disabled person. AR 27. The ALJ specifically noted that Plaintiff's hand injury had been treated with splinting, oral pain relieving medication (Vicodin, Norco), anti-inflammatory injections, and physical therapy. AR 28. Over the course of this treatment, Plaintiff's grip strength and range of motion improved and his pain and swelling subsided. AR 28-29. As early as January 16, 2013, Dr. Smith approved Plaintiff's return to work

with modified duties.  AR 28.  On May 3, 2013, Plaintiff himself reported that yard work and taking out the garbage had become easier as physical therapy progressed.  AR 28.  By July, Plaintiff's physician had declared him permanent and stable, able to lift up to 25 pounds, but precluded from pushing and pulling.  AR 29.

After carpal tunnel release surgery in November 2013, Plaintiff recovered quickly.  AR 29.  By December 27, 2013, less than a year after his occupational accident, Plaintiff had a full range of finger, hand and wrist motion and was cleared to return to all activities as tolerated.  AR 29.  Plaintiff did not seek medical treatment again until January 28, 2015.  AR 29.

Similarly, although Plaintiff's neck, back and foot pain limited his range of motion and resulted in tenderness upon palpation, treatment consisted of an oral pain reliever (Norco) and muscle relaxant (Cyclobenzaprine).  AR 30.  The ALJ noted that Plaintiff was not a candidate for back surgery and had declined injections.  AR 30.

In support of assessment of the objective medical evidence, the ALJ then set forth a detailed discussion of the medical opinions contained in the record (more fully discussed in section VIII of this order).  AR 30-32.  Considered with regard to the record as a whole, the Court finds the ALJ's analysis to set forth clear and convincing reasons for the conclusions she reached.

The law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  As part of his or her analysis of the record as a whole, an ALJ properly considers whether the medical evidence supports or is consistent with a claimant's pain testimony.  *Id.*; 20 C.F.R. § 404.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

In short, a claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p,

2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The standard of review limits a district court's discretion on challenges to the ALJ's adverse credibility determinations. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson*, 402 U.S. at 401. If the evidence could reasonably support either outcome, as is the case here, a court may not substitute its judgment for that of the ALJ. *Flaten v. Sec'y, Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The Court will not second guess the ALJ's assessment of Plaintiff's credibility in this case.

### VIII. The ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ's determination that he could perform a range of light work was not supported by substantial evidence and that the ALJ erred in failing to adopt fully the medical opinions of Dr. Smith, Dr. Lim, and Dr. Van Kirk. The Commissioner disagrees and argues further that any error is harmless in light of Dr. Van Kirk's opinion, which was less restrictive than the residual functional capacity determined by the ALJ. The Court finds that the ALJ properly relied on the record as a whole.

#### A. Medical Opinions

#### 1. Agency Physicians

In the initial consideration of Plaintiff's application for benefits, agency physician I. Ocrant, M.D., opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand or walk about six hours in an eight-hour work day; occasionally climb ramps, stairs, ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl. AR 75. He had unlimited ability to push and pull. AR 75. Plaintiff had limited ability to lift overhead, handle, finger or feel. AR 75-76. Although he should avoid extreme cold, Plaintiff's exposure to extreme heat, wetness, humidity, noise, vibration, hazards and fumes and

odors were not limited. AR 76. On reconsideration, agency physician L. Kiger, M.D., agreed. AR 90-92.

### 2. **Permanent and Stationary Report**

On July 22, 2013, Dr. Smith discharged Plaintiff as permanent and stationary. AR 938-39. Plaintiff continued to experience constant pain in his left wrist and difficulty with turning and gripping. AR 938. Noting that Plaintiff experienced arthritis and carpal tunnel syndrome in addition to his industrial injury, Dr. Smith opined that Plaintiff should lift no more than 25 pounds and perform no pushing or pulling. AR 938-39.

### 3. **Orthopedic Consultative Examination**

On October 10, 2013, orthopedist Dale H. Van Kirk, M.D., examined Plaintiff to assess his left wrist and hand pain and chronic neck and back pain. AR 603-06. Plaintiff told Dr. Van Kirk that he could do some cooking and housekeeping, and took a walk daily. AR 604. Plaintiff was experiencing chronic pain in his left wrist and was scheduled for carpal tunnel release surgery in November 2013. AR 603. The hand pain increased with repetitive grasping and twisting motions. AR 603.

Plaintiff had neck and low back pain radiating into the arms and legs for about fifteen years as a result of progressive cumulative trauma. AR 603. The neck pain increased with repetitive flexing and extension of the neck, overhead reaching, and pushing and pulling with the upper extremities. AR 603. The lower back pain increased with coughing and sneezing, heavy lifting, twisting, climbing, running, jumping, squatting, ascending and descending ladders and stairs, crouching and crawling. AR 603. The pain increased in cold weather. AR 604. The doctor opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and stand and walk for a cumulative total of six hours daily. AR 606. Sitting was not limited. AR 606. "Claimant [was] limited to frequent postural activities including bending, stooping, crouching, climbing, kneeling, balancing, crawling, pushing or pulling." AR 606. He had no manipulative limitations except that he should not be required to work repetitively with his hands. AR 606. He should not work in a cold or damp environment. AR 606.

///

### 4. Post-Surgical Opinion

On December 27, 2013, Dr. Smith conducted his final examination of Plaintiff's left hand following the November 2013, carpal tunnel release surgery. AR 633. Dr. Smith discharged Plaintiff from care, noting "Return to all activities as tolerated." AR 633.

### 5. Qualified Medical Examiners' Opinions

Eduardo Lin, M.D., certified in physical medicine and rehabilitation and pain medicine, prepared a worker's compensation qualified medical evaluation on January 3, 2014. AR 642-717. After reviewing Plaintiff's treatment records and examining Plaintiff. Dr. Lin opined that Plaintiff had not yet reached maximum medical improvement for his injury and was not yet permanent and stable. AR 651. Dr. Lin recommended assignment to a physical medicine and rehabilitation specialist for continued treatment. AR 651. For the time being, Plaintiff was capable of "modified work with limitation of no pushing or pulling more than 5 to ten pounds, occasional back bending and twisting activities, and also to avoid repetitive use of the [left] hand." AR 651.

On January 29, 2014, Suresh Mahawar, M.D., certified in internal medicine, physical medicine and rehabilitation, and pain management, prepared a worker's compensation qualified medical evaluation relating to Plaintiff's asthma, 2012 hernia repair, and sleep problems. AR 888-98. Dr. Mahawar attributed Plaintiff's development of sleep difficulties to his December 2012 hand injury. AR 897. The doctor opined that Plaintiff did not qualify as a qualified injured worker for his internal injuries but may qualify based on his musculoskeletal injuries. AR 896.

## B. Applicable Law

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating

professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755).

In addition, Drs. Lin and Mahawar's opinions and Dr. Smith's July 2013 opinion were provided in conjunction with the treatment and evaluation of Plaintiff's December 31, 2012, hand injury through his employer's workers' compensation insurance. A claimant's ability to work under the Social Security scheme is measured differently from a claimant's ability to work under California's workers' compensation scheme. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Under the workers' compensation scheme, categories of work are not based on strength, but on "minimum demands for physical effort," determined by whether the worker sits, stands or walks for most of the work day. *Id.* (quoting Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1-A (California State Labor Code)). In contrast, categories of work under the Social Security scheme are differentiated by step increases in lifting capacities. *Id.* Guidelines for Work Capacity are not conclusive in Social Security cases. *Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996). Although an ALJ may draw logical inferences flowing from evidence of workers' compensation disability determinations, he or she may not directly find a claimant disabled in a Social Security disability proceeding based on the outcome of the claimant's claim for workers' compensation. *Id.* at 544; *Desrosiers*, 846 F.2d at 576.

///

///

///

### C. The ALJ's Determination is Specific, Legitimate and Based on the Record as a Whole

As set forth above, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb ramps and stairs; climb ladders, ropes and scaffolds; balance, stoop, kneel, crouch and crawl; and reach overhead bilaterally. AR 26. Plaintiff could frequently handle, feel and finger. AR 26. He should have no concentrated exposure to extreme cold. AR 26.

In reaching this determination, the ALJ first evaluated Plaintiff's credibility and briefly outlined the course of treatment of his December 31, 2012, injury and subsequent carpal tunnel release surgery. AR 26-30. The ALJ placed the various opinions of Plaintiff's capacity to perform work in the context of Plaintiff's preexisting impairment, his work injury and gradual recovery, and finally, his carpal tunnel release surgery and rapid recovery thereafter. AR 30. In the course of the analysis, the ALJ also recognized the significantly different standards of workers' compensation evaluations and Social Security regulations:

> A finding of disability is an ultimate issue that is reserved to the Commissioner. Because the issue is reserved, these opinions cannot be afforded controlling weight, but were nevertheless duly considered per 20 CFR 404.1527(d) and Social Security Ruling 96-2p. Initially, the claimant was advised to stay off work or limited from using his left hand immediately following his December 31, 2012, injury. Beginning January 16, 2013, the claimant was advised to perform modified work with no use of his left hand, otherwise totally disabled. Beginning February 27, 2013, the claimant was advised to perform modified work with no more than five pounds of lifting with his left hand. Beginning May 24, 2013, the claimant was advised to perform modified work with no more than 15 pounds of lifting with no pushing or pulling. Beginning July 8, 2013, the claimant was stated to be unable to return to his regular work, with permanent restrictions of lifting no more than 25 pounds with no pushing or pulling. Following left carpal tunnel surgery on November 5, 2013, the claimant was advised to avoid repetitive activities or any lifting of weight for two weeks, and considered temporarily and totally disabled. Beginning December 27, 2013, the claimant was advised to return to all activities as tolerated. These opinions are given some weight. The opinions are all based on workers' compensation standards, which are significantly different from Social Security regulations. The stated opinions regarding any total, permanent or temporary disability status are given little weight. For the majority of the period since the alleged onset date, the claimant was opined to be able to lift 25 pounds and to engage in modified work, which is not inconsistent

> with my findings in this decision. The 25 pounds of lifting is also consistent with the claimant's own report of abilities on January 4, 2015.

AR 30 (citations to record omitted).

In determining that Plaintiff could appropriately perform light work, the ALJ gave "some weight" to Dr. Van Kirk's opinion of Plaintiff's residual functional capacity, but stated that his consultative opinion "d[id] not sufficiently consider the claimant's degenerative disc disease, osteoarthritis of the CMC articulation of the bilateral hands and carpal tunnel syndrome, nor his subjective reports." AR 31. Accordingly, the ALJ declined to adopt Dr. Van Kirk's opinion that Plaintiff was capable of performing medium work, instead finding that Plaintiff was capable of light work with occasional postural activities and manipulative limitations. AR 31-32.[3]

In contrast, the ALJ gave "great weight" to the opinions of the state agency physicians that Plaintiff could perform the equivalent of light exertion and perform all postural activities occasionally, but could only occasionally reach bilaterally overhead and frequently perform light handling, feeling and fingering. AR 32. The ALJ reasoned that the agency physicians' opinions were consistent with Plaintiff's history of degenerative disc disease, osteoarthritis of the CMC articulation in both hands, and bilateral carpal tunnel syndrome.

Plaintiff's contention focusses on the ALJ's failure to provide specific reasons for rejecting Dr. Smith's July 2013 opinion that Plaintiff should never push or pull. Plaintiff does not consider Dr. Smith's December 2013 opinion, following his final examination following Plaintiff's carpal tunnel surgery, that Plaintiff could return to all activities as tolerated. As indicated in the context of the ALJ's analysis set forth above, however, the ALJ explicitly gave some weight to Dr. Smith's directing Plaintiff to resume normal activities as tolerated, which arguably included tolerable amounts of pushing and pulling. Plaintiff's brief does not consider the opinion the Dr. Smith gave following Plaintiff's surgery instead emphasizing that in the context of his January 2014 qualified medical opinion, Dr. Lin opined that Plaintiff could push and pull approximately five to ten pounds. The Court declines to conclude that the ALJ erred in

---

[3] In view of Dr. Van Kirk's opinion that Plaintiff could perform a range of medium work, the Court is confused by Plaintiff's contention that Dr. Van Kirk's opinion should have been adopted in its entirety. *See* Doc. 12 at 14-15.

favoring Dr. Smith's December 2013 opinion, given when Dr. Smith was acting as Plaintiff's private physician rather than as a workers' compensation provider.

In any event, Plaintiff's analysis and preferred outcome are not binding here. "[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of his treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguable support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### IX. **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Alan Richard Rocconi.

IT IS SO ORDERED.

Dated: **January 9, 2019**  /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE

17